GULOTTA, Judge.
Melvin Howard, a New Orleans Police Department (NOPD) motorcycle police officer, was suspended for twenty days for working a paid detail at Liberty Bank during working hours with the NOPD. The Civil Service Commission upheld the suspension imposed by the appointing authority. We affirm.
Plaintiff contends the findings of the Commission were based upon hearsay evidence and are manifestly erroneous. According to plaintiff, the Liberty Bank time card offered into evidence was based on “hearsay testimony”. Plaintiff argues that the best evidence of the Bank’s time cards are the original cards identified by the proper person from the bank who prepared and has custody of these cards. Howard also raises a hearsay objection to the introduction into evidence of his daily activity sheets showing his work hours and activities with the NOPD from December 29, 1980 through June 12, 1982. These exhibits indicate that Howard worked at Liberty Bank while on duty with the NOPD. Again, plaintiff claims the best evidence of the police department records are the original records prepared by their proper custodian.
This investigation began when a fellow NOPD officer observed some “time cards” fall out of Howard’s traffic book at police headquarters. According to this witness, his check of those cards against Howard’s daily activities while on duty with the NOPD indicated that Howard was at the Liberty Bank when the NOPD activity sheet represented otherwise. This information was turned over to superior ranking officers and ultimately placed with the Office of Municipal Investigation.
The special agent for OMI testified that he had subpoenaed the bank’s time cards and payroll records and compared those records with the “office beat roll book with the motorcycle division of the New Orleans Police Department.” He further made a comparison between the time cards and the daily activity sheets completed and signed by Melvin Howard.
The Howard time card exhibit was introduced into evidence in connection with the testimony of Howard’s fellow officer who saw the time cards fall from Howard’s traffic book. The daily activity sheet exhibit was prepared and offered into evidence in connection with the testimony of the special agent for OMI. Upon plaintiff’s objection to these two exhibits, the hearing examiner indicated that he would recess the hearing in order to afford production of the original records from the Liberty Bank and NOPD. Thereupon, Howard’s counsel refused the offer for the reason that the documents had not been prepared by the witnesses. Over Howard’s objection, the exhibits were introduced into evidence.
This same OMI agent testified further that Howard had admitted working a paid detail at Liberty Bank during the time he was on duty with the NOPD.
Howard identified the time card introduced into evidence as being similar to the one used at Liberty Bank. He denied he had ever worked at Liberty Bank on City time, however. Although he received payment from the Bank in connection with paid details, he testified he had not worked “one minute” at the bank on City time. Howard described his activities as a coordinator for work details obtained by other officers.
Howard acknowledged in his testimony that on August 5, 1981 he had punched in and out at the bank for a period of 29 minutes while on duty with the NOPD. His explanation was that he had not performed any services for the bank at that time but was probably writing trip sheets or stapling tickets in connection with his *701 work with the NOPD. He stated he may have been at the bank at that time in connection with bank security, but had not performed any services for Liberty Bank while there. Howard testified further that the bank time sheets indicated work details for other police officers although the time sheets were in Howard’s name. He explained that as a coordinator of these work details he would receive the money from the bank and pay that money to other police officers who actually worked the details.
The law is well settled that the appointing authority bears the burden of proof of showing cause for the disciplinary action imposed. See Reboul v. Department of Police, 420 So.2d 491 (La.App. 4th Cir.1982), and the authorities cited therein. Further, findings of the Civil Service Commission will not be disturbed absent a showing that those findings were arbitrary, capricious or manifestly erroneous. LSA-R.S. 49:964; Newman v. Department of Fire, 425 So.2d 753 (La.1983). Relying on LSA-R.S. 49:956, the First Circuit in Messer v. Department of Cor., La. State Pen., 358 So.2d 975 (La.App. 1st Cir.1978) stated that the Civil Service Commission, although not bound under the Administrative Procedures Act by technical rules of evidence, must base its findings upon competent and sufficient evidence.
Applying these well settled rules to the facts of the instant case, we are led to conclude that the Commission properly admitted the documents into evidence, and that its findings are based upon competent and sufficient evidence and are not manifestly erroneous. Howard’s objection to the introduction of the documents was based on a question of authenticity. The hearing examiner afforded an opportunity to comply with the objection, but it was refused. Moreover, Howard could have subpoenaed the original documents either for the purpose of showing lack of authenticity or for the purpose of showing inaccuracy. This was not done. Furthermore, although contradicted by Howard, the OMI investigating agent stated that plaintiff had acknowledged that he had worked for Liberty Bank during NOPD working hours.
The evidence considered, we cannot say the Commission erred. Accordingly, the judgment is affirmed.
AFFIRMED.