hWOODARD, Judge.
The City of Opelousas, Louisiana, (the City) terminated Sergeant Lawrence A. Thi-bodeaux (Thibodeaux), a policeman, for off-duty misconduct. He appealed his termination to the City of Opelousas Fire and Police Civil Service Board (civil service board). It affirmed his dismissal. He appealed this decision to the district court. It reversed the decision of the civil service board and ordered reinstatement with discipline and conditions. The City appeals the decision of the district court. We reverse.
FACTS
On the night of June 27, 1996, Thibodeaux was off-duty and outside the city limits, beyond his police jurisdiction. He left the Oaks Lounge at 2:30 a.m. in his truck and drove down a service road, that parallels Interstate 49 near Opelousas, Louisiana, and ran off-the-road. He left the scene of this accident on foot and went ftto a nearby house owned by Mr. and Ms. Harold Bacque. Without consent, he entered their home, walked down the hall to their bedroom, where he was confronted by the Bacques who asked what he was doing in their home. Although dressed in civilian clothing, he showed the Bacques his badge and told them he was investigating a 911 telephone call made from their house; that he had received a call from the Opelousas Police Department, directing him to this location. Then, he left. The Bacques thought that he appeared intoxicated or confused. Not having made a 911 call, Mr. Bacque promptly called the Opelousas Police Department to inquire about it. There was no record of such a call having been made.
In the meantime, Thibodeaux’s truck had been discovered on the side of the road, along with his revolver on the seat. Not knowing what had happened to Thibodeaux, the Opelousas Police Department was immediately called into action to investigate. After leaving the Bacques’ residence, Thibo-deaux had gotten a ride to Jill Babineaux’s home. The Opelousas Police Department’s investigation led them to that location where they arrested him at 4:30 a.m. for reckless driving and, later, for driving while intoxicated. To the arresting officers, he seemed intoxicated. They asked him to take the breath analyzer test. He refused.
In July 1996, the City first attempted to terminate Thibodeaux for this incident. It presented a July 3, 1996 report of his conduct to the Board of Alderman (the board) on July 9, 1996. The board voted to terminate him. He was not notified of the specific charges against him or allowed to defend these charges until after their July 9, 1996 meeting. The City, realizing its due process errors, rescinded this attempt.
On September 4, 1996, the City initiated a new attempt to terminate him by sending him written notice, which failed to mention *256 any reason for his termination. Prior to the issuance of the September 4, 1996 letter, á pre-disciplinary hearing was held before the board on August 26, 1996. Relying on the earlier report, the board made a final termination decision by formal vote at their August 26,1996 meeting.
Thibodeaux appealed his termination to the civil service board. It affirmed the decision of the board on October 9, 1996. On October 25, 1996, by a hand-delivered letter, he served the civil service board, through its President, written Notice of Appeal. The Notice specified twelve grounds of error in the civil service board’s October 9,1996 decision and requested that the civil service board file a certified copy of the transcript of its October 9, 1996 hearing with the trial court.
|3The board failed to take any action required of it by law upon receiving this Notice of Appeal. On January 27,1997, Thibodeaux filed a Writ of Mandamus with the trial court to compel compliance. The trial court ordered the board to file a transcript. It obliged, and the proceedings were converted to Thibodeaux’s trial court, civil service appeal.
On September 12, 1997, the trial court denied the City’s Motion to Dismiss Appeal, which was filed on the grounds that the Notice of Appeal was improper. The Motion also alleged that Thibodeaux should have filed some similar document with the trial court within thirty days of the October 9, 1996 civil service board decision.
By final Judgment, dated September 4, 1997, the trial court reversed the decision of the civil service board and ordered Thibo-deaux’s reinstatement in the police department. The court opined, in part:
The question in this case is whether Sergeant Thibodeaux’s off duty conduct “going into the Boque’s [sic] home and pulling out his badge as Police Officer” interfered with the efficient operation of the Police Department?
In fact, Assistant Chief Paul Gennuso stated at the Pre-termination Hearing that Sergeant Thibodeaux performs his duties in a satisfactory manner while he was on duty.
Although Sergeant Thibodeaux’s action and arrest may have inspired embarrassment to the Police Department, such publicity, complaints and news articles do not constitute legal cause for discharge.
[[Image here]]
This Court finds that Sergeant Thibo-deaux’s actions, although embarrassing to the Opelousas Police Department does not give rise to a termination from employment.

The Court finds that his actions while off duty did not effect the efficient and orderly operation of the Opelousas Police Department. The Civil Service Board has failed to show a real and substantial relationship between Thibodeaux’s conduct and the efficient and orderly operation of the Police Department.

[[Image here]]
IT IS HEREBY THE ORDER OF THIS COURT that the decision of the Opelousas Civil Service Board is hereby reversed. Officer ^Lawrence Thibodeaux shall be reinstated with back pay with the following conditions and disciplinary actions.
(1) Sergeant Thibodeaux shall submit himself immediately for substance abuse evaluation and counseling at the Opelou-sas Substance Abuse Clinic at the City’s costs;
(2) Sergeant Thibodeaux shall follow the recommendations of the Substance Abuse Clinic and its Counselor on a long term basis, for not less than one (1) year from today and for as long as the Counselor deems necessary;
(3) Sergeant Thibodeaux shall submit to random drug screening for drugs and alcohol at the discretion of the Substance Abuse Counselor;
(4) The Opelousas Substance Abuse Clinic is hereby ordered to report its findings and evaluations to the Chief of Police for the City of Opelousas each month for at least the next twelve (12) months or as long as the Counselor deems necessary;
*257 (5) Sergeant Thibodeaux shall have twelve (12) months of probationary status with the Opelousas Police Department starting August 1, 1997 during his period of substance abuse treatment and evaluation;
(6) Sergeant Thibodeaux shall be suspended for a period of ninety (90) days without pay for his conduct in this ease, retroactive to his date of termination.
(Emphasis added.)
The trial court’s discipline was similar to Thibodeaux’s suggestions in his appeal before the civil service board.
The City appeals the trial court’s decision. Thibodeaux answers the appeal, seeking to overturn the trial court’s discipline for him in the judgment.
ASSIGNMENTS OF ERROR
The City alleges the trial court erred by:
(1)Denying its motion to dismiss the appeal due to Thibodeaux’s untimely filing, and
|s(2) Reversing the decision of the Opelou-sas Fire and Police Civil Service Board to terminate Mr. Thibodeaux and then ordering its own disciplinary actions including suspension.
Thibodeaux argues:
(1) The trial court correctly denied the Motion to Dismiss Appeal filed by the City of Opelousas on grounds of alleged untimeliness, since Sergeant Thi-bodeaux timely served the Opelousas Fire and Police Civil Service Board with a notice of appeal as required by La.R.S. 33:2501(E)(2).
(2) The trial court correctly reinstated Sergeant Thibodeaux for the failure of the City of Opelousas to show a real and substantial relationship between Sergeant Thibodeaux’s off-duty conduct and the orderly and efficient operation of the Opelousas Police Department.
(3) The trial court erred in modifying the discipline imposed by the City of Opel-ousas after correctly finding that Sergeant Thibodeaux’ discharge was not in good faith for cause.
(4)Sergeant Thibodeaux is entitled to an award of attorney’s fees pursuant to La.R.S. 33:2501.1.
LAW
The City’s Motion to Dismiss
On October 9, 1996, the civil service board rendered a decision on Thibodeaux’s appeal. On October 25, 1996, he served the civil service board with a hand-delivered Notice of Appeal, stating the grounds for his appeal and demanding that the board file with the trial court a certified transcript of the record, any written findings of fact, and all papers on file in the office of the board relating to the October 9,1996 decision. The Notice of Appeal was received by the chairman of the civil service board on October 25, 1996.
On these facts, the City contends that he did not perfect a timely appeal with the trial court because nothing was filed with that court prior to his January 21,1997 Petition of Mandamus. The City contends that it was his duty to file his Notice of Appeal with the trial court within thirty days of the civil service board’s October 9, 1996 decision. The trial court denied the City’s Motion to Dismiss for failing to file Rthe appeal with the trial court within thirty days. Considering the clear language of La.R.S. 33:2501(E)(2) and the actions of Thibodeaux to perfect his appeal, the City’s legal argument on this issue is almost frivolous.
La.R.S. 33:2501(E)(1) and (2) state:
(1) Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.
(2) The appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of the appeal, stating the grounds thereof and demanding that a certified transcript of the record, or *258 ■written findings of facts, and all papers on file in the office of the board affecting or relating to such decision, be filed with the designated court. The board shall, within ten days, after filing of the Notice of Appeal, make, certify, and file the complete transcript with the designated court, and that court shall thereupon proceed to hear and determine the appeal in a summary manner.
Thibodeaux was required to send his Notice of Appeal to the civil service board, not the trial court, within thirty days. The civil service board then had ten days to prepare the record and forward it to the trial court for review. Upon receipt of the record by the trial court, the trial court assumes jurisdiction. Thibodeaux very carefully complied with the requirements of La.R.S. 33:2501(E)(2). He was not required to do more.
The City’s assignment of error that the trial court erred in overruling its Motion to Dismiss is without any legal merit.
The TRlal Court’s Decision to Reverse the Board
In this issue, the City contends that the trial court erred in reversing the civil service board’s decision to terminate Thibo-deaux.
Relying on a case from this circuit, Laborde v. Alexandria Mun. Fire & Police Civil Serv. Bd., 566 So.2d 426 (La.App. 3 Cir.), writ denied, 568 So.2d 1055 (La.1990), the trial court held that the City had not established by a preponderance of the evidence that Thibodeaux’s conduct on the night of June 27, 1996 had |7Ímpaired “the efficient and orderly operation of the police department.” The Laborde case involved a policeman for the City of Alexandria, Louisiana, who became intoxicated while off-duty, left a bar, driving his ear, at 2:30 a.m. in the morning. After speeding through the City of Pineville, Louisiana with police in pursuit, his car came to rest on the grounds of the Central Louisiana State Hospital, knocking down handrails, shrubbery, and striking an air-conditioning unit. Laborde was arrested and' charged with driving while intoxicated.
The City of Alexandria began termination proceedings against Laborde. Ultimately, the civil service board and the trial court upheld them. Laborde appealed the decision to this court. We reversed the termination decision, finding that the City had failed to prove that the off-duty conduct of Laborde had in any way impaired the efficient and orderly operation of the police department. We found that Laborde’s termination was arbitrary, capricious, and made without legal cause.[1]
The facts in Laborde are very similar to this ease. In both cases, the conduct was the result of the alcohol abuse. In neither case were the officers inside the jurisdictions of their respective police departments at the time of their misconduct. The off-duty conduct of the officer in Laborde, as here, was reprehensible. In Laborde, once his car came to a stop, he identified himself as a police officer to the investigating officers. Here, Thibodeaux identified himself as a police officer to two citizens in their home. The only difference is that Thibodeaux, while intoxicated to the extent that he says he had no memory of events, entered a citizen’s home in the middle of the night without permission, woke them up, and bogusly held himself out to be investigating a 911 call made from their home.
In Laborde we held “[tjhere is no evidence in the record from which we can conclude that his actions impaired the operation of the Alexandria Police Department or violated any policies or rules or regulations of the Alexandria Police Department concerning an off duty policeman.” Laborde, 566 So.2d at 432. In Laborde, it was the City of Pine-ville’s police department that was primarily disrupted by Laborde’s misconduct, unlike here, where the Opelousas police department, of which Thibodeaux was a member, had to respond to his drunken misconduct and the chaos |8it created. In view of the Louisiana Supreme Court’s requirement that the conduct be “prejudicial to the public service [the specific police department] in which the employee in question in engaged” in order for there to be “cause” to discharge him, *259 this fact is critical to our decision. Walters v. Dep’t. of Police of City of New Orleans, 454 So.2d 106, 113 (La.1984). Because of this crucial fact, we find the case sub judice to be significantly factually distinguished from Laborde to render Laborde inapplicable. Accordingly, it was error for the trial court to have followed Laborde in the instant case.
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause. La. Const, art. 10 Sec. 8(A). The Louisiana Supreme Court formulated jurisprudential guidelines to apply this constitutional principle in Walters by stating that “ ‘[cjause’ for dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation.” Walters, 454 So.2d at 113. In Bannister v. Dep’t. of Streets, 95-404 (La.1/16/96), 666 So.2d 641, 647, the court added the following guideline to the requirements of Walters. It said, “[sjtated differently, disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the ‘efficient operation’ of the public service.” In addition to these jurisprudential guidelines, “cause” is further statutorily defined in La.R.S. 33:2500. The City sought Thibodeaux’s dismissal for violations of La. R.S. 33:2500 A(3) and (15). Those provisions state:
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
[[Image here]]
(3) the commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
Js,....
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
Thibodeaux’s behavior was, indeed, egregious, especially coming from someone hired to uphold the law and protect the public. Alcohol is no excuse. Generally speaking, it is common sense to conclude that maintaining an officer of the law, who breaks into people’s houses drunk in the middle of the night, on the police force reflects badly on the department as a whole and could diminish the department’s credibility with the public, consequently impairing its ability to function in an efficient and orderly manner. For example, a police officer’s ability to do his or her job efficiently in certain situations may depend on the public’s ability to believe that the officer, and the department which employs him, are responsible, dependable, and trustworthy. Specifically, Thibodeaux’s actions had to have substantially impaired the efficient operation of the police department, at the very least, on the night of June 27, 1996. Because of his conduct that evening, the entire department was disrupted in the middle of the night: the assistant police chief was called in to act on Thibodeaux’s inglorious actions; multiple off-duty police officers were called in to locate Thibodeaux and to deal with his vehicle which had been wrecked and abandoned with his revolver on the seat; the department had to respond to the complaint. made by the Bacques that a man, later identified as Thibodeaux, had appeared in their bedroom at 2:30 a.m., holding himself out to be responding to a 911 call on behalf of the Opelousas police department. It goes without saying that the use of department resources to deal with this complaint, perform these investigations, locate Thibodeaux, and require off-duty police officers to come to work in the middle of the night is, of necessity, detrimental to the department’s, otherwise, efficient operation. Presumably, at the very least, shifts of officers must be doubled, rescheduled, or the department must operate temporarily short handed, and tasks originally assigned to certain officers *260 would have to be reassigned. Further, it is obvious that the same resources could not be used at the same time for two different purposes. Thus, the use of police department resources to deal with the situations which Thibodeaux created deprived the use of those resources in other areas in which the department would have been able to use them.
| ipPrior to June 27, 1996, Thibodeaux’s alcohol abuse problem came to the forefront, and it caused him substantial problems within the department, although there was no evidence that his use of alcohol had interfered with his ability to perform his police duties. Common sense, again, tells us that this latest incident, along with Thibodeaux’s prior history of an alcohol abuse problem, must significantly alter the mind set of those working with him. His problem and the potential menace it can cause cannot be ignored by responsible people. For example, every time someone at the department assigns him to a particular task, he or she must consider how Thibodeaux’s substance abuse problem might adversely affect the task and whether it is wise to assign Mm to do it — ■ whether he can handle it — in effect, can he be trusted to do the job assigned. Even Thibodeaux admitted in his testimony that he had created a trust problem within the department. He stated that he would submit to substance abuse supervision for however long it took for the department to trust him again.
As Thibodeaux intimated, trust is essential and once damaged, takes time to repair. Thus, it can be seen that without this trust in its officer, the efficient and orderly operations of the police department will be impaired in the future as well. Police departments deal with life and death situations everyday. How can the members of the police department be expected to operate efficiently when they cannot trust Thibo-deaux and when they must make adjustments to compensate for, or guard against, possible detrimental behavior in which he might engage? It is of no small moment that Thibodeaux and the department have been at this crossroad before and that maintaining him on the force has resulted in this incident. At that time, his alcohol abuse caused him to appear before a civil service board. He knew, then, the seriousness of his problem, which he had created for himself, as it related to his job and for the department, as well as the consequences the problem could have for him, yet even with all of that, he did not alter his behavior. And, he has demonstrated to his fellow officers and to the public his willingness to be irresponsible and to break the law in numerous ways: driving while intoxicated, putting himself and other people at risk; unlawfully entering a citizen’s home; leaving the scene of an accident; leaving his revolver available to any passerby; refusing to be accountable and take responsibility for his actions by taking a breathalyzer test. It is understandable how Thibodeaux has now made trust an issue which, of necessity, would have to affect the lnpolice department’s dealings with him in the future, should he remain on the force, and thus affect the efficient operations of the department.
Therefore we find that Thibodeaux’s conduct on the night in question was clearly contrary to La.R.S. 33:2500 A(3) and (15). Further that it was “detrimental to [the police department’s] efficient operation,” and thus met the guidelines of Walters, 454 So.2d 106. Also, “there was a real and substantial relationship between the improper conduct and the ‘efficient operation’ of the public service,” thus meeting the guidelines of Bannister, 666 So.2d 641, for there to be cause for Thibodeaux’s dismissal.
Therefore, we find that the civil service board acted in good faith and for legal cause in dismissing Thibodeaux. Accordingly, the trial court’s decision, reversing the civil service board upholding his termination, was erroneous. The trial court’s decision is reversed and the civil service board’s decision is reinstated.
The trial Court’s Modification of the Discipline for Thibodeaux
Thibodeaux and the City contend that the trial court erred in imposing discipline upon him. By reason of our reversal of the trial court’s decision and upholding the board’s decision to terminate him this issue is moot.
*261 Thibodeaux’s Entitlement to Attokney’s Fees
Thibodeaux contends that he is entitled to an award of attorney’s fees, pursuant to La.R.S. 33:2501.1, as he prevailed in the trial court. The statute states:
When an appeal is taken by an employee in the classified service pursuant to R.S. 33:2501 to a municipal fire and police civil service board and the board determines, in reversing the decision of the appointing authority, that the corrective or disciplinary action taken by the appointing authority was without just cause as provided in R.S. 33:2501, the board may award to the appealing employee attorney fees to be assessed against the appointing authority not to exceed one thousand dollars in any one appeal.
(Emphasis added).
The statute does not provide for the award of attorney’s fees for a trial court’s reversal of a decision of the civil service board. The statute only applies when the Incivil service board reverses the decision of the appointing authority. Therefore, the statute is not applicable here.
Thibodeaux’s claim for award of attorney’s fees is without merit.
CONCLUSION
The trial court’s decision, reversing the City of Opelousas’ Fire and Police Civil Service Board’s decision to terminate Sergeant Thibodeaux and imposing conditions and discipline upon him is reversed. The civil service board’s decision is reinstated. Sergeant Thibodeaux is cast with the costs of this appeal.
REVERSED.
DECUIR, J., concurs in the result.

. The author of this opinion does not agree with the Laborde decision and would have dissented.